UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIMBERLY LAWTON,

                    Plaintiff,

          v.                                                **DECISION AND ORDER**
                                                           14-CV-867S
TOWN OF ORCHARD PARK,
CHIEF OF POLICE MARK PACHOLEC,
DET. LT. PATRICK McMASTER,
DET. JOHN PAYNE,
DET. LARRY BRAND, and
JOHN DOE,

                    Defendants.

# I. INTRODUCTION

In 2013, Thomas Meyers accused Kimberly Lawton of poisoning their infant son's bottles of breast milk and formula.   He allegedly did so to better his chances of winning the former couples' bitter custody dispute, which would also allow him to avoid paying Lawton child support.   Meyers's accusations, however, were determined to be baseless, and Lawton was exonerated, but not before she was arrested, detained, and deprived of custody of her infant son and two older children.

In this action, Lawton asserts a variety of state and federal claims against the Town of Orchard Park and various law enforcement officers arising from her arrest and detention, including claims under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.   Defendants have moved to dismiss those claims and Lawton has cross-moved to amend her complaint.   (Docket Nos. 16, 22.)   For the reasons that follow, Defendants' motion is granted in part and denied in part, and Lawton's

1

motion is granted.

As an initial matter, this Court grants Lawton's Motion to Amend her complaint. (Docket No. 22.)   District courts have broad discretion to grant a party leave to amend its pleadings and the federal rules dictate that courts "freely give leave when justice so requires."   Fed. R. Civ. P. 15 (a)(2); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). Given the procedural posture of this case, this Court finds it most expeditious and in the interests of judicial economy to permit Lawton to amend her complaint as proposed (Docket No. 22-2) and assess Defendants' Motion to Dismiss as against that pleading. Consequently, Lawton's Motion to Amend (Docket No. 22) is granted and she will be directed to file the proposed amended complaint (Docket No. 22-2), without the redline alterations, as the amended complaint and operative pleading in this matter.

Defendants' Motion to Dismiss is resolved below.

## II. BACKGROUND

The following facts, drawn from Lawton's amended complaint, are assumed true for purposes of assessing Defendants' Motion to Dismiss.   See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Lawton and Meyers share a son named George.   (Amended Complaint, ¶ 23.)   It appears that Lawton and Meyers's romantic relationship ended before George was born. (Amended Complaint, ¶ 24.)   Given their lack of a continuing relationship, Lawton told Meyers that she would be seeking child support from him.   (Amended Complaint, ¶ 24.)

Thereafter, in early 2013, Lawton and Meyers each sought sole custody of George

in Family Court, with Lawton also seeking an award of child support. (Amended Complaint, ¶¶ 25-27.) Family Court denied both applications for sole custody and instead awarded Lawton a Temporary Order of Residence and granted Meyers limited visitation. (Amended Complaint, ¶¶ 25, 26.) The court adjourned child support proceedings until April 12, 2013, after Lawton challenged Meyers's financial disclosure. (Amended Complaint, ¶¶ 28-30.)

In the meantime, in March 2013, Lawton sent bottles of breast milk and formula with George on one of his visits with Meyers. (Amended Complaint, ¶ 31.) Meyers added foreign substances to the bottles, including blood-thinning medication and cleaning products, and then sent them for testing to Avomeen Analytical Services, which is a private chemical-analysis laboratory in Michigan. (Amended Complaint, ¶¶ 31, 32.)

On or about April 3, 2013, Avomeen Analytical Services produced an analysis of the contents of the bottles that "identified compounds includ[ing] a blood thinning pharmaceutical, a chlorinated aliphatic, and a number of aldehydes, indicating the suspect formula is adulterated." (Amended Complaint, ¶ 33.) Meyers then used this report to file a complaint against Lawton that same day with the Child Protective Services division of the New York State Office of Children and Family Services, in which Meyers alleged that Lawton was poisoning or had poisoned George with "blood thinner" and "cleaning products." (Amended Complaint, ¶ 34.) This prompted Child Protective Services to immediately visit Lawton's residence to notify her of the complaint and inspect the premises. (Amended Complaint, ¶ 35.)

The next day—April 4, 2013—Lawton took George to see his pediatrician and then

to Women & Children's Hospital of Buffalo, where he was examined and tested and found to not be suffering from any form of poisoning. (Amended Complaint, ¶¶ 36, 37.) Meanwhile, Meyers filed a criminal complaint against Lawton that day, alleging that she was poisoning bottles of breast milk and formula to be given to George. (Amended Complaint, ¶ 38.)

On April 5, 2013, Meyers went to Lawton's residence to obtain bottles of breast milk and formula, ostensibly to give to George. (Amended Complaint, ¶ 39.) In reality, the individual defendants, who were now investigating Meyers's criminal complaint from the day before, directed Meyers to visit Lawton's residence and retrieve the bottles for further analysis. (Amended Complaint, ¶¶ 40, 41.) After giving Meyers the bottles, Lawton saw him deliver them to one of the defendants, who was waiting in an undercover police vehicle on a nearby street. (Amended Complaint, ¶ 42.) The bottles, however, were in Meyers's possession long enough outside Defendants' view or supervision to allow him or an associate the opportunity to contaminate the bottles before delivering them to the waiting officers. (Amended Complaint, ¶ 43.)

On April 8, 2013, Meyers filed an Order to Show Cause in Family Court seeking temporary custody of George based on his reports that Lawton had been poisoning George's bottles. (Amended Complaint, ¶ 44.) Family Court granted Meyers's request on April 10, 2013, and entered a Temporary Order of Custody and Visitation in Meyers's favor, with only limited, supervised visitation for Lawton. (Amended Complaint, ¶ 45.) Because of this Order, Family Court deemed the child support proceedings, where Meyers's financial disclosure was still at issue, to be moot and therefore canceled them.

(Amended Complaint, ¶¶ 27-30, 46.)   Further, in May 2013, the father of Lawton's two other children sought and received custody of them based on Meyers's allegations. (Amended Complaint, ¶ 47.)

Meanwhile, the criminal investigation continued.   Lawton contacted Defendants on multiple occasions to urge them to complete their investigation quickly, because the open investigation was being used against her in Family Court and was preventing her from regaining custody of her children.   (Amended Complaint, ¶ 50.)   During one such call, Lawton spoke to Defendant Payne, who asked her to consent to an interview. (Amended Complaint, ¶¶ 51, 52.)   When Lawton declined to be interviewed without her lawyer present, Detective Payne told her that she would never get her children back. (Amended Complaint, ¶ 53.)   Similarly, during a call with Defendant Pacholec, Lawton again declined to be interviewed without her lawyer present, to which Pacholec responded that he would have her arrested instead.   (Amended Complaint, ¶¶ 54-56.)

On September 3, 2013, the New York State Office of Children and Family Services informed Lawton that the Child Protective Services investigation into Meyers's accusations against her determined that the accusations were "unfounded."   (Amended Complaint, ¶ 49.)

On or about October 1, 2013, the New York State Police Forensic Investigation Center produced a Trace Evidence Report, which indicated that the bottles of breast milk and formula that Meyers had provided to law enforcement in April 2013 contained ethanol (alcohol).   (Amended Complaint, ¶ 58.)   There were no findings concerning the presence of "blood thinner" or "cleaning products," as the Avomeen Analytical Services

analysis had shown.   (Amended Complaint, ¶ 59.)   According to Lawton, however, Defendants kept the bottles that Meyers had provided to law enforcement "for an inappropriate and extended period of time in conditions unsuitable to preserve the contents thereof for accurate testing and/or analysis."   (Amended Complaint, ¶ 49.) Defendants then did not submit the bottles to the New York State Police Forensic Investigation Center in Albany, New York, until April 19, 2013, despite having received them two weeks earlier.   (Amended Complaint, ¶ 57.)

On October 17, 2013, Defendants arrested Lawton at her residence for "Attempted Assault in the Second Degree" and "Endangering the Welfare of a Child."   (Amended Complaint, ¶ 60.)   Lawton was detained and remained in custody until October 25, 2013. (Amended Complaint, ¶ 61.)

Lawton alleges that her arrest and detention were without probable cause, because Defendants were aware of and disregarded the following information when they arrested and detained her:

(1)     Meyers's motives in filing charges against Lawton, given his involvement in both child custody and child support proceedings with her;

(2)     Meyers's previous use of the Avomeen Analytical Services report, which he commissioned, to initiate a Child Protective Services investigation based on the presence of blood-thinning pharmaceuticals and industrial cleaners in the tested bottles (not ethanol);

(3)     the possibility that the presence of ethanol reflected in the Trace Evidence Report could have been the natural byproduct of improper storage and handling of the bottles;

(4)     Meyers's unsupervised possession of the bottles

6

> Defendants tested and his opportunity to contaminate them; and
>
> (5) the fact that the Avomeen Analytical Services report and the Trace Evidence Report differed in their findings.

(Amended Complaint, ¶ 62.)

Despite being aware of this information, Defendants arrested Lawton and insisted that the Erie County District Attorney's Office prosecute her and present her case to the Erie County Grand Jury, notwithstanding that the District Attorney's Office was skeptical. (Amended Complaint, ¶ 63.)  In March 2014, the District Attorney's Office presented the case to the Erie County Grand Jury, which elected to not return an indictment on or about March 21, 2014, after which the charges against Lawton were not pursued.   (Amended Complaint, ¶ 64.)

Lawton alleges that Defendants' conduct resulted in her "suffer[ing] . . . mental and emotional injuries and pain and suffering . . . medical expenses; legal fees; loss of parental and familial association; harm to reputation; loss of business and business opportunities; as well as other damages."   (Amended Complaint, ¶ 65.)

### III. DISCUSSION

Lawton asserts nine causes of action against Defendants.

Lawton's first three causes of action assert federal claims against each defendant: First, Lawton asserts that Defendants violated her rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizure when they arrested and detained her without probable cause.   (Amended Complaint, ¶¶ 66-79.)   Second, Lawton alleges that Defendants violated her rights under the Fourth, Fifth, and Fourteenth Amendments by

maliciously prosecuting her. (Amended Complaint, ¶¶ 80-88.) Third, Lawton asserts that Defendants violated her right to familial association under the First and Fourteenth Amendments by causing her to lose custody of her children. (Amended Complaint, ¶¶ 89-94.)

Lawton's remaining six causes of action assert state law claims for false arrest against each defendant (Amended Complaint, ¶¶ 95-99); false imprisonment against each defendant (Amended Complaint, ¶¶ 100-107); malicious prosecution against each defendant (Amended Complaint, ¶¶ 108-117); intentional infliction of emotional distress against the individual defendants (Amended Complaint, ¶¶ 118-123); negligent infliction of emotional distress against the individual defendants (Amended Complaint, ¶¶ 124-129); and negligent hiring, training, and supervision against Defendant Town of Orchard Park (Amended Complaint, ¶¶ 130-140).

Defendants move to dismiss each of Lawton's causes of action for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.[1]

## A. Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed.

---

[1] Defendants additionally sought dismissal of Lawton's state law claims for failure to file a timely Notice of Claim under New York General Municipal Law § 50-e, but since the Appellate Division, Fourth Department granted Lawton leave to serve a late Notice of Claim, see Lawton v. Town of Orchard Park, 30 N.Y.S.3d 458 (4th Dep't 2016), Defendants concede that this ground no longer serves as a basis for dismissal, see Defendants' Memorandum of Law, Docket No. 27-2, p. 2.

R. Civ. P. 8 (a)(2).   But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98.   Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)   ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).   Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678.   The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2).   Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v.

9

Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

**B.    42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To properly plead a cause of action under § 1983, a plaintiff's complaint must include allegations that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of

damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Personal involvement need not be active participation.  It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act."  See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation;  (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

On its own, § 1983 does not provide a source of substantive rights, but rather, a

method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).   Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.   Here, Lawton's federal claims are grounded in the First, Fourth, Fifth, and Fourteenth Amendments.

**C.     Lawton's Federal Claims**

    **1.     Claims against Defendant Town of Orchard Park**

Defendants argue that Lawton's federal claims against Defendant Town of Orchard Park must be dismissed because she has failed to adequately plead that a municipal custom or policy caused her constitutional deprivations.   Lawton contends that her amended complaint is sufficient under governing law.

Section 1983 imposes liability on a municipality whose official custom or policy causes an employee to violate an individual's constitutional rights.   Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   Municipal liability cannot be premised solely on a *respondeat superior* theory, but must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]"   Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).   Thus, a municipality will be liable for a § 1983 violation only where the municipality itself was the "moving force" behind the deprivation of plaintiff's federal rights.   See Bd. of the County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S.

397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). That is, "a municipality will not be held liable solely because it employs a tortfeasor." Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 601 (S.D.N.Y. 2000). Consequently, "to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

As such, to adequately state a claim for municipal liability, a plaintiff must plead the existence of an official policy or custom that caused the denial of a constitutional right. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). The existence of municipal policy or custom can be demonstrated in several ways, including: (1) showing an officially promulgated and endorsed municipal policy, Monell, 436 U.S. at 658; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur, 475 U.S. at 480–81; (3) showing that municipal decisionmaking evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise constitutional policy so deficient and widespread that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Oklahoma City v. Tuttle, 471 U.S. 808, 819, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), or (4) failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). When the existence of a municipal policy or custom is premised on a failure to train, the

municipality's failure to train its employees must rise to the level of deliberate indifference.

See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

> Deliberate indifference occurs where conscious disregard is displayed for the consequences of actions, not just simple or even heightened negligence. To prove deliberate indifference, a plaintiff must demonstrate that: (1) a policymaker knows to a moral certainty that his or her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the municipality employee will frequently cause the deprivation of a citizen's constitutional rights.

Knicrumah v. Albany City Sch. Dist., 241 F. Supp. 2d 199, 207 (N.D.N.Y. 2003) (internal quotations omitted) (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)); see also Young v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998).

Finally, "[i]t is well settled that a plaintiff's conclusory allegations, which merely recite the elements of a Monell claim, are insufficient to state a claim for municipal liability." Bryant v. Ciminelli, 6:16-CV-06766 EAW, 2017 WL 3188988, at *3 (W.D.N.Y. July 26, 2017) (citing cases); Weaver v. City of N.Y., No. 13-cv-20 (CBA)(SMG), 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("[V]ague and conclusory assertions are not sufficient to state a claim of municipal liability under Monell.")   A plaintiff must allege facts tending to support, at least circumstantially, an inference that the alleged municipal policy or custom exists.   Dwares, 985 F.2d at 100.

Here, the only allegation concerning municipal liability in each of the three federal claims is that the individual defendants' conduct giving rise to the claim "was pursuant to a policy and custom of Defendant Town of Orchard Park."   (Amended Complaint, ¶¶ 77,

86, 92.)  The only other allegation concerning a policy and custom is one set forth at the beginning of the amended complaint, which alleges as follows:

> Upon information and belief, at all relevant times stated herein, Defendant TOWN OF ORCHARD PARK and the Orchard Park Police Department had a policy and custom of depriving citizens of their right to parental and familial association, arresting citizens without probable cause, unreasonably seizing citizens in violation of the Fourth and Fourteenth Amendments, seizing citizens without probable cause, failing to afford citizens due process, infringing on citizens' constitutional right to freedom from bodily restraint, depriving citizens of their liberty interests under the Constitution and of generally disregarding the rights of citizens under the United States Constitution.

(Amended Complaint, ¶ 19.)

These general allegations are wholly conclusory; no facts whatsoever are pleaded from which the existence of a particular policy or custom could be inferred.   See Dwares, 985 F.2d at 100 (mere assertion of the existence of a policy or custom is insufficient in absence of factual allegations supporting an inference that such a policy or custom exists). Nowhere does Lawton identify an official policy or custom that caused the denial of her constitutional rights.   See Zahra, 48 F.3d at 685.   Dismissal of each federal claim against the Defendant Town of Orchard Park is therefore required.   See Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011) (dismissing Monell claims on the basis that the plaintiff failed to allege facts sufficient to show that a municipal policy or custom caused the alleged constitutional violations); Bryant, 2017 WL 3188988, at *4 (dismissing Monell claim because the plaintiff failed to allege facts concerning a municipal policy or custom); Houghton v. Cardone, 295 F. Supp. 2d 268, 278 (W.D.N.Y. 2003) (dismissing

<u>Monell</u> claim on the basis that the complaint "contain[ed] only the most conclusory allegations" without "a single fact [] alleged in support of those allegations").

Lawton argues that she has adequately pleaded a claim for municipal liability on the theory that actions taken by officials with final policymaking authority caused the constitutional violations at issue. <u>See</u> <u>Pembaur</u>, 475 U.S. at 480–81. In this regard, Lawton argues that Defendant Mark Pacholec, Chief of Police, had final policymaking authority and that he and the other individual defendants ignored certain information in determining whether probable cause existed for Lawton's arrest. Thus, according to Lawton, the single event involved in this case (her arrest without probable cause) gives rise to a claim for municipal liability. <u>See, e.g.</u>, <u>Amnesty Am. v. Town of West Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2004) (noting that "even a single action by a decisionmaker with final authority to establish municipal policy with respect to the action ordered is sufficient to support municipal liability").

Lawton's argument fails for several reasons. First, Lawton does not allege that Pacholec's conduct constitutes an official policy or custom of the Town of Orchard Park. Second, Lawton does not allege that Defendant Pacholec was Chief of Police during all relevant times, and in fact, alleges that "Chief Samuel M. McCune" was sent the Trace Evidence Report in October 2013. (Amended Complaint, ¶ 58.). Third, Lawton does not allege that Defendant Pacholec himself arrested her nor that he directed the individual defendants to arrest her.[2] (<u>See, e.g.</u>, Amended Complaint, ¶ 60 (alleging only that

---

[2]In what appears to be an effort to supplement her amended complaint, Lawton relies on and cites information from news articles concerning the individual defendants' involvement in this case. (<u>See, e.g.</u>, Plaintiff's Memorandum of Law, Docket No. 22-10, pp. 13-14.) Setting aside the admissibility and

Lawton "was arrested by the Defendants" on or about October 17, 2013).)   Fourth, the information that the individual defendants, including Pacholec, allegedly ignored and which Lawton contends gives rise to her false arrest and malicious prosecution claims, see Amended Complaint, ¶ 62, pertains solely to the determination of whether probable cause existed for Lawton's arrest, which does not implicate a policy or custom.[3]   See Pembaur, 475 U.S. at 486 (White, J., concurring) ("A sheriff, for example, is not the final policy maker with respect to the probable-cause requirement for a valid arrest.   He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from the controlling law of arrest would not represent municipal policy."). Consequently, the general rule that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy" applies.   Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Lawton also appears to argue that her allegations in support of her state law claim for negligent hiring, training, and supervision adequately plead a Monell claim, but as set forth above, the standard for a Monell claim based on failure-to-train is one of deliberate indifference, not negligence.   And nowhere in the amended complaint does Lawton include factual allegations of deliberate indifference.

---

reliability of this evidence, on a Rule 12 (b)(6) motion, this Court cannot consider information outside the four corners of the complaint without converting the motion to one for summary judgment, which this Court declines to do.   See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998); Friedl v. City of N.Y., 210 F.3d 79, 83-84 (2d Cir. 2000).

[3]In this regard, Lawton's argument does not pertain to her claim concerning familial association, for which no policy or custom has been pleaded or argued.

Accordingly, in the absence of factual allegations supporting the existence of a municipal policy or custom that caused Lawton's alleged injuries, Lawton's federal claims against Defendant Town of Orchard Park must be dismissed.

### 2. Claims against the Individual Defendants

Lawton brings her federal claims against the individual defendants in only their individual capacities. (Amended Complaint, ¶ 18.)

### a. Claim 1: False Arrest/False Imprisonment under the Fourth and Fourteenth Amendments

A false arrest claim brought under § 1983 and premised on the Fourth Amendment right to be free from unreasonable seizure, including arrest without probable cause, is analyzed the same as a claim for false arrest brought under New York law. See Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). False arrest and false imprisonment claims are essentially synonymous. See Weyant, 101 F.3d at 853 (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)); Nix v. City of Rochester, No. 6:14-CV-06395 (MAT), 2017 WL 3387103, at *5 (W.D.N.Y. Aug. 5, 2017); see also Walker v. City of New York, 15 CV 500 (NG)(ST), 2017 WL 2799159, at *3 (E.D.N.Y. June 27, 2017) ("A § 1983 claim for false arrest is a corollary of the Fourth Amendment right to remain free from unreasonable seizures, a right which includes the right to remain free from arrest absent probable cause.").

To state a claim for false arrest under New York law, a plaintiff must allege facts showing that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4)

the confinement was not otherwise privileged.   See Willey v. Kirkpatrick, 801 F.3d 51, 70-71 (2d Cir. 2015) (quoting Broughton v. State of New York, 335 N.Ed.2d 310, 314 (N.Y. 1975)); Nix, 2017 WL 3387103, at *5.

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."   Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Walker, 2017 WL 2799159, at *3 ("An arrest is privileged when probable cause exists, and probable cause is, therefore, a complete defense to a claim for false arrest.") (citing Weyant).

Probable cause "is a complete defense to an action for false arrest brought under New York law or § 1983."   Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012).   A finding of probable cause is made based on the "totality of the circumstances." Illinois v. Gates, 462 U.S 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1982).   An officer has probable cause to arrest "'when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"   Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)).   In assessing probable cause, an officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."   Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotation marks omitted).   When a victim or eyewitness reports a crime, probable cause will generally be found to exist, unless the circumstances raise doubt as

to the veracity of the complaint.  See Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012); Wahhab v. City of New York, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005).

Lawton alleges that the individual defendants arrested and confined her; that she was aware of her confinement; that she did not consent to her arrest and confinement; and that her arrest and confinement were without probable cause.  (Amended Complaint, ¶¶ 60, 61, 74, 75, 96, 102-104.)  She further alleges that circumstances existed that raised doubt or should have raised doubt as to the veracity of Meyers's complaints against Lawton (e.g., the ongoing custody and child support dispute), and in turn, the existence of probable cause.  (Amended Complaint, ¶¶ 62, 67-73.)  This is sufficient to state a false arrest claim.  See Lawyer v. Cota, 1:16-cv-62-jgm, 2017 WL 2572372, at *3 (D.Vt. June 14, 2017) (finding allegations that the plaintiff was detained and confined for four days on charges for which there was no probable cause sufficient, at the motion to dismiss stage, to state a claim for false arrest).

Whether probable cause existed is in dispute and cannot be resolved at this time. Moreover, Defendants are not entitled to qualified immunity at this early stage of the litigation because "[t]here is no doubt that the right to be free from arrest without probable cause [i]s clearly established" and the existence of probable cause is in dispute.  Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007).

Defendants argue that dismissal is nonetheless required because Lawton fails to adequately allege their personal involvement or that they acted outside the scope of their official capacities as law enforcement officers.  Lawton alleges, however, that the individual defendants were each involved in her arrest and imprisonment.  (Amended

Complaint, ¶¶ 60, 61, 67, 74, 75, 104.)  Although she does not parse each individual defendant's role or personal involvement, Lawton's amended complaint is minimally sufficient to survive Defendants' motion to dismiss.  Discovery will allow her to particularize her claims going forward. In addition, Lawton sufficiently alleges that the individual defendants acted in their individual capacities outside the scope of their duties as law enforcement officers, particularly considering her allegations that they ignored certain information that allegedly detracted from a finding of probable cause to arrest. (Amended Complaint, ¶¶ 17, 18, 62, 67-74 106.)

Consequently, Defendants' motion to dismiss Lawton's § 1983 false arrest/false imprisonment claim is denied.

### b.    Claim 2:    Malicious Prosecution under the Fourth, Fifth, and Fourteenth Amendments

To state a claim for malicious prosecution under both federal and New York law, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding against her, (2) the termination of the proceeding in her favor, (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice."  Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)); Ramos v. City of New York, 15 Civ. 6085 (ER), 2017 WL 3267736, at *7 (S.D.N.Y. July 31, 2017) ("The elements of malicious prosecution under Section 1983 are substantially the same as the elements under New York Law; the analysis of the state and the federal claims is identical.") (quotation marks and citation omitted)   For a § 1983 claim, a plaintiff must additionally allege "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."

Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). Like a claim for false arrest, probable cause is a complete defense to a malicious prosecution claim. See Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2010) (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)).

Lawton meets these pleading requirements. She alleges that the individual defendants arrested her and insisted that the District Attorney's Office prosecute her (Amended Complaint, ¶¶ 60, 63, 83, 84); that the criminal proceedings terminated in her favor (Amended Complaint, ¶ 64); that there was no probable cause for the prosecution (Amended Complaint, ¶¶ 62, 74, 81); that the criminal proceedings were instituted with malice (Amended Complaint, ¶¶ 82, 84, 85); and that she suffered post-arraignment detention (Amended Complaint, ¶¶ 61, 76).

Defendants seek dismissal of Lawton's malicious prosecution claim on the same basis as they did her false arrest/false imprisonment claim, which this Court has already rejected. Consequently, for the reasons stated above, Defendants' motion to dismiss Lawton's § 1983 malicious prosecution claim is denied.

### c. Claim 3: Familial Association under the First and Fourteenth Amendments

Familial association claims fall under the First and Fourteenth Amendments. Retaliation on account of family association is analyzed under the First Amendment, see Adler v. Pataki, 185 F.3d 35, 42-45 (2d Cir. 1999), while government interference in familial relationships, particularly parent-child, is analyzed under the substantive due process clause of the Fourteenth Amendment, see Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999); Wilkinson v. Russell, 182 F.3d 89, 103-104 (2d Cir. 1999); see

also Deskovic v. City of Peekskill, 894 F. Supp. 2d 443, 467-68 (S.D.N.Y. 2012) (discussing right of familial association under the First and Fourteenth Amendments). Here, Lawton does not claim retaliation; she alleges that Defendants' actions caused her to lose custody of her children. Her claim therefore falls under the substantive due process clause of the Fourteenth Amendment.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. There are two broad categories of due process claims—substantive and procedural. A substantive due process claim is based on the deprivation of a constitutionally protected life, liberty, or property interest. See B.D. v. DeBuono, 130 F. Supp. 2d 401, 431 (S.D.N.Y. 2000). A procedural due process claim is based on the deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard. Id. at 432-33. With respect to any due process claim — substantive or procedural—"[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

But not all governmental actions that infringe on rights are of constitutional proportion. To sufficiently state a substantive due process claim, a plaintiff must allege that the infringement on his or her right was "arbitrary, conscience-shocking, or oppressive in a constitutional sense." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995); Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007) (finding that a plaintiff must show that "defendants infringed on [his] property right in an

23

arbitrary or irrational manner").   Substantive due process does not protect against action by a state actor that is simply "incorrect or ill-advised."   Id. (citing Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)).   Thus, to state a substantive due process claim, a plaintiff must allege (1) a valid, protected interest, and (2) the infringement of that interest by the defendants in an arbitrary, irrational, or conscience-shocking manner.   See Cine SK8, 507 F.3d at 784; Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005).

Here, Lawton alleges that the individual defendants violated her right to familial association, which, as noted above, is an interest protected under the Fourteenth Amendment.   (Amended Complaint, ¶ 90, 91.)   Lawton has not, however, alleged that the individual defendants infringed her rights in a way "'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'"   See Anthony v. City of New York, 339 F.3d 129, 142-43 (2d Cir. 2003) (quoting Tenenbaum, 193 F.3d at 600).

Taking them as true, Lawton's allegations show that Family Court removed her children from her custody after she was afforded a full and fair opportunity to be heard in the context of formal custody proceedings before a court of competent jurisdiction.   Such removal does not offend substantive due process.   Moreover, Lawton's allegations establish that Defendants did not in any way initiate the Family Court proceedings or cause Family Court to remove her children from her custody.   The fact that information gathered in the context of the criminal investigation may have been used in the custody proceedings does not equate to causation.   Further, Lawton's allegations show that the individual defendants were not personally involved in the custody proceedings, which

Lawton alleges were instituted and conducted by non-parties. For these reasons, Lawton fails to state a Fourteenth Amendment familial association claim.

### D.     Lawton's State Claims

Defendants do not seek dismissal of Lawton's state law claims for false arrest, false imprisonment, and malicious prosecution apart from the arguments discussed and rejected above. Accordingly, since this Court finds that the federal counterpart claims may proceed against the individual defendants and the analysis is essentially the same for the state claims, Defendants' motion to dismiss Lawton's state law claims against each defendant[4] for false arrest, false imprisonment, and malicious prosecution is denied.

Defendants do seek dismissal, however, of Lawton's emotional distress claims and her claim for negligent hiring, training, and supervision.

### 1. Emotional Distress Claims

In New York "a person may not bring claims for intentional infliction of emotional distress or negligent infliction of emotional distress where, as here, there are more traditional theories of tort liability available." Hays v. City of New York, 14-CV-10126 (JMF), 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017) (citing cases). That is, "New York does not recognize [intentional-infliction-of-emotional-distress] or [negligent-infliction-of-emotional-distress] causes of action where the conduct underlying them may be addressed through traditional tort remedies, such as false arrest." Berrio v. City of

---

4Lawton's state law claims survive as against Defendant Town of Orchard Park, because unlike in § 1983 actions, municipalities may be held vicariously liable for the actions of their employees under New York law. See Jenkins v. City of New York, 478 F.3d 76, 95 n. 21 (2d Cir. 2007); Calderon v. City of New York, No. 14 Civ. 1082(PAE), 2015 WL 6143711, at *3 (S.D.N.Y. Oct. 19, 2015).

New York, 15-CV-09570 (ALC), 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017). Thus, emotional distress claims may "be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158-160 (2d Cir. 2014).

Here, Lawton's emotional distress claims involve the same conduct that underlies her false arrest/false imprisonment and malicious prosecution claims. (Amended Complaint, ¶¶ 118-129.) Because alternate remedies are available, Defendants' motion to dismiss Lawton's emotional distress claims is granted. See Jones v. Parmley, 5: 98-CV-374 (FJS/TWD), 2016 WL 5793711, at *1 (N.D.N.Y. Oct. 4, 2016) (collecting cases standing for the proposition that emotional distress claims do not survive when other remedies remain available).

### 2. Negligent Hiring, Training, and Supervising

"To maintain a claim against a municipal employer for the 'negligent hiring, training, and retention' of a tortfeasor under New York law, a plaintiff must show that the employee acted 'outside the scope of her employment.'" Velez v. City of New York, 730 F.3d 128, 136-37 (2d Cir. 2013) (quoting Gurevich v. City of New York, No. 06 Civ. 1646 (GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008)). If an employee acts within the scope of his employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*. Id. at 137. "This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the . . . adequacy of the training." Karoon v. N.Y.C. Transit Auth., 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997).

To state a claim for negligent hiring, training, and supervision, a plaintiff must allege, in addition to the elements of standard negligence, that "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam). "'A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee.'" Bouchard v. N.Y. Archdiocese, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (quoting Richardson v. City of New York, Nol. 04 Civ. 05314 (THK), 2006 WL 3771115, at *13 (S.D.N.Y. Dec. 21, 2006)); Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 401 (E.D.N.Y. 2005) ("to prevail on a negligent hiring, retention, or supervision claim under New York law, the plaintiff must show that the defendant/employer knew or should have known of its employee's propensity to engage in the injurious conduct in question").  And "a single incident is generally insufficient to demonstrate liability under a failure to train theory" or a failure-to-supervise theory. Breitkopf v. Gentile, 41 F. Supp. 3d 220, 254 (E.D.N.Y. 2014) (quoting Perez v. N.Y.C. Dep't of Corr., No. 10-CV-2697 RRM RML, 2013 WL 500448 (E.D.N.Y. Jan. 17, 2013)); White-Ruiz v. City of New York, No. 93 CIV. 7233 (DLC)(MHD), 1996 WL 603983, at *10 (S.D.N.Y. Oct. 22, 1996).

Here, Lawton's allegations are entirely conclusory.  (Amended Complaint, ¶¶ 130-

140.)  She does not allege any facts indicating that Defendant Town of Orchard Park knew or should have known of the individual defendants' propensity for injurious conduct at their time of hire or anytime thereafter, nor does she allege any facts suggesting that Defendant Town of Orchard Park failed to investigate the individual defendants even though it had knowledge that would warrant an investigation.   Moreover, Lawton fails to allege any specific deficiencies in the Town of Orchard Park's hiring, training, or supervision methods.   And finally, Lawton fails to allege any incidents other than her single encounter with the individual defendants that would support a failure to hire, train, or supervise theory.   Consequently, Defendants' motion to dismiss this claim is granted.

## IV. CONCLUSION

For the reasons stated above, Lawton's Motion to Amend is granted, and Defendants' Motion to Dismiss is granted in part and denied in part.

As it relates to Lawton's federal claims, each of her federal claims against Defendant Town of Orchard Park and her familial association claims are dismissed, but her claims for false arrest/false imprisonment and malicious prosecution will proceed against the individual defendants in their individual capacities.

As it relates to Lawton's state law claims, her emotional distress claims and negligent hiring, training, and supervision claims are dismissed, but her claims for false arrest, false imprisonment, and malicious prosecution will proceed against Defendants.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion to Amend (Docket No. 22) is GRANTED.

FURTHER, that the Plaintiff is directed to file her proposed amended complaint (Docket No. 22-2), without the redline alterations, as the amended complaint in this action.

FURTHER, that Defendants' Motion to Dismiss (Docket No. 16) is GRANTED in part and DENIED in part as set forth above.

SO ORDERED.

Dated:     August 18, 2017
           Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge